UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL AARON WITKIN,<br><br>Plaintiff,<br><br>v.<br><br>B. COOK, et al.,<br><br>Defendants. | No. 2:20-cv-2355 DJC SCR P<br><br>ORDER AND FINDINGS &<br>RECOMMENDATIONS |

Plaintiff is a former state prisoner proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Before the court is defendants' motion to dismiss the action as malicious pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). (ECF No. 61.) For the reasons described below, the undersigned recommends that defendants' motion be denied.

## BACKGROUND

**I.      Second Amended Complaint and Screening**

Plaintiff, a former prisoner at Deuel Vocational Institution, is proceeding on his second amended complaint ("SAC") dated October 4, 2021. (ECF No. 20.) Plaintiff's SAC alleges that on May 6, 2020, defendants Cook, Dobie, and Look overcharged him with a serious offense for speaking with another inmate on the facility's first tier. (Id. at 3-5.) Plaintiff claims the charge was an adverse action against him for filing lawsuits and administrative grievances, and that it

1

was "obvious" none of the elements for a serious offense were present. (Id. at 5-6.) Lieutenant Thompson, the Senior Hearing Officer, agreed to reduce the offense at the disciplinary hearing held on June 11, 2020. (Id. at 6-7.) On February 17, 2022, Judge Barnes, the previously assigned magistrate judge, determined that plaintiff's SAC stated a cognizable First Amendment retaliation claim against defendants Cook, Dobie, and Look, but no other cognizable claims. (ECF No. 21.) That First Amendment retaliation claim is the only live claim remaining in the case. (ECF No. 31.)

**II.    Defendants' Motion to Dismiss, Fed. R. Civ. P. 12(b)(6)**

On August 15, 2022, defendants moved to dismiss plaintiff's SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 43.) Defendants claimed that plaintiff failed to establish an adverse action against him because of any protected activity and did not suffer any cognizable harm. (Id.) On April 4, 2023, Judge Barnes issued findings and recommendations that defendants' motion be denied. (ECF No. 47.) On August 18, 2023, District Judge Calabretta adopted the findings and recommendations in full and denied defendants' motion. (ECF No. 52.)

**III.    Defendants' Motion to Revoke Plaintiff's In Forma Pauperis Status**

While the Rule 12(b)(6) motion was pending, defendants moved to revoke plaintiff's in forma pauperis status due to his release from prison. (ECF No. 49.) Plaintiff was proceeding in forma pauperis pursuant to 28 U.S.C. § 1915(b)(1), which requires prisoners to pay down the full filing fee from their prison trust account. Defendants argued plaintiff could no longer proceed under that provision and must submit a new application or pay the remainder of the filing fee. (Id. at 4-5.) Judge Barnes denied the motion but ordered plaintiff to submit a new application or pay the balance of the filing fee. (ECF No. 53.) Plaintiff later paid the balance. (See Docket.)

**DEFENDANTS' MOTION TO DISMISS THE ACTION AS MALICIOUS**

**I.    The Parties' Initial Briefing**

Defendants now move to dismiss the action pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), which states in relevant part: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that…the action or appeal is frivolous or malicious." Defendants cite a "SMART Goal-Planning"

2

1  document that plaintiff completed while still incarcerated and his extensive litigation history to
2  establish his malicious intent in pursuing this lawsuit.  (ECF No. 61 at 7-8.)
3         Plaintiff completed the "SMART Goal-Planning" worksheet on January 17, 2021, prior to
4  his release from custody.  (Declaration of J. Garcia, Exh. A, ECF No. 61-1 at 4-5.)  Plaintiff
5  responded to the worksheet's fields as follows:

> **Describe the objective:**
> *Bringing the authorities to justice*
> **What do I want to accomplish:**
> *Complete the litigation of 20 federal lawsuits against CDCR*
> **Who will be involved/affected:**
> *The perpetrators*
> **Where will it take place?**
> *E.D. Cal. (federal courthouse)*
> **I will measure/track my goal by using the following numbers or methods:**
> *Track hours*
> **I will know I've reached my goal when**
> *I receive 20 checks*
> **Briefly describe how the goal will address the objective stated above.**
> *Civil actions serve a valuable public objective*
> **Write down your completed SMART goal.**
> *Knock down CDCR for about $250,000*
> **What are 3 actions step [sic] you will take to complete your objective?**
> *Do what I do*
> **What are 3 possible setbacks to reaching your goal?**
> *Crooked judicial officers*

26  (Id.)  Defendants contend that this document reflects plaintiff's "ulterior motive in pursuing his
27  lawsuits, *i.e.,* to knock down CDCR for $250,000."  (ECF No. 61 at 7-8.)
28  ////

Defendants also point to plaintiff's litigation history as evidence of his malicious intent.[1] Defendants cite 17 civil rights actions initiated by plaintiff since 2012 as evidence of his "intent to use litigation as a means of harassing prison officials." (ECF No. 61 at 7.) Defendants claim that 8 of the 17 suits were filed between 2020 and 2022 as his incarceration was ending or after it terminated, suggesting that plaintiff "is attempting to fulfill his stated intention [in the goal-planning document] of suing CDCR defendants as a means to retaliate for his incarceration." (Id. at 7ECF No. 23 at 10.) Defendants also assert that plaintiff is "well aware of the costs of his litigation" and that his suits "consume valuable public resources." (Id. at 7-8.)

Plaintiff opposes the motion and disputes any malicious intent. "Plaintiff is pursuing one simple goal here and one only. ***Curing egregious constitutional violations in the operation of the California prison system.***" (ECF No. 64 at 1 (emphasis in original).) Plaintiff contends that the worksheet "merely reflects [my] disenchantment with the CDCR's cavalier attitude toward its daily, repeated abuses of prisoner Constitutional rights and Plaintiff's desire to hold CDCR to account for the litany of violations committed against [me] personally." (Id. at 2.)

In their reply brief, defendants argue that plaintiff's opposition amounts to "irrelevant" allegations of CDCR misconduct and personal attacks against defendants and their counsel. (ECF No. 65 at 4-5.) Defendants assert that plaintiff's few substantive arguments fail to refute the evidence that plaintiff filed this action maliciously.[2]

////

////

---

[1] The court grants defendants' request to judicially notice dockets and select filings in these actions (ECF No. 61-2). Fed. R. Evid. 201(b); Harris v. County of Orange, 682 F.3d 1126, 1131–32 (9th Cir. 2012) (court may judicially notice "documents on file in federal or state courts").

[2] Defendants' reply mainly challenges plaintiff's request to judicially notice two systemic prison reform cases as evidence of CDCR's ongoing constitutional violations. (ECF No. 64-1 at 1-2.) The court grants judicial notice of those cases, though their relevance to the instant motion is questionable. "Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice." Wyatt v. Terhune, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003), overruled on other grounds, Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014); cf. Peterson v. Mickles, No. 3:17-cv-01702 IM, 2020 WL 214749, at *5 (D. Or. Jan. 14, 2020) (finding judicial notice of prior prison abuse decisions inappropriate under Fed. R. Evid. 201(b)), aff'd sub nom. Peterson v. McCorkhill, 849 F. App'x 708 (9th Cir. 2021).

II.   **Order to Show Cause Regarding <u>Witkin v. Thomas</u>, 2:22-cv-1310 DJC DB P (E.D. Cal.)**

Throughout their briefing, defendants relied on recommendations issued in another one of plaintiff's § 1983 actions, <u>Witkin v. Thomas</u>, No. 2:22-cv-1310 DJC DB P (E.D. Cal.). (See, e.g., ECF No. 61 at 6-8; ECF No. 65 at 4-5.) There, Judge Barnes recommended that plaintiff's complaint be dismissed as malicious based on his litigation history and the same SMART Goal-Planning document:

> Considering the allegations in the present case, plaintiff's litigation history, and the statements in plaintiff's "SMART Goal-Planning" worksheet, plaintiff filed this action as part of his stated goal to extract $250,000 from CDCR. It was, therefore, filed with the intent or desire to harm or harass, and is malicious.

<u>Witkin v. Thomas</u>, No. 2:22-cv-1310 DJC DB P, 2024 WL 584046, *4 (E.D. Cal. Feb. 13, 2024). Defendants contended that <u>Witkin v. Thomas</u> involved the same argument and evidence as the present case, while noting that the District Court had not yet adopted Judge Barnes' recommendation to dismiss. (ECF No. 61 at 6.)

However, after the defendants' motion to dismiss was fully briefed, District Judge Calabretta issued an order rejecting Judge Barnes' recommendations and denying defendants' motion to dismiss the action as malicious. <u>Witkin v. Thomas</u>, No. 2:22-cv-1310 DJC DB P, 2024 WL 4268037 (E.D. Cal. Sept. 23, 2024). Judge Calabretta concluded that plaintiff did not bring the action maliciously, citing, *inter alia*, plaintiff's position "that he is bringing this lawsuit to fight what he perceives to be injustices with the California prison and legal system[.]" (<u>Id.</u> at *5.) Judge Calabretta continued:

> Indeed, although Plaintiff wrote that he hoped to extract $250,000 from Defendants, that statement does not automatically suggest that Plaintiff intended to harm Defendants to the tune of $250,000. Rather, Plaintiff seems to seek such money to "significantly impact the perpetual evil practices" allegedly committed by Defendants. That does not suggest an intent to harm or harass Defendants.

(<u>Id.</u> (internal citations omitted).)

On October 15, 2024, the undersigned ordered defendants to show cause why their motion to dismiss should not be denied based on Judge Calabretta's ruling in <u>Witkin v. Thomas</u>. (ECF No. 67.) In response, defendants cited District Judge Mueller's contrary dismissal order in

5

1  another of plaintiff's § 1983 cases, Witkin v. Gonzalez, docketed three days before Judge

2  Calabretta's order.  (ECF No. 68 at 2-3.)  There, Judge Mueller adopted Magistrate Judge

3  Brennan's findings and recommendations that plaintiff's litigation history and statements in the

4  SMART Goal-Planning document did in fact demonstrate the maliciousness of his action:

> In his opposition to the motion, plaintiff does not deny that he filled out the worksheet, nor that he has brought over two dozen federal lawsuits, including the instant case, in furtherance of his stated plan to "knock down CDCR for about $250,000."  Defendants reasonably contend that this evidence shows that the instant lawsuit "is not an attempt to remedy a wrong, but an attempt to harm CDCR employees." [….]  For this additional reason, pursuant to the IFP statute, dismissal is warranted.

Witkin v. Gonzalez, No. 2:22-cv-1212 KJM EFB (PC), 2024 WL 3091887, at *3 (E.D. Cal. June 18, 2024) (citations omitted), report and recommendation adopted, No. 2:22-cv-1212 KJM EFB (HC), 2024 WL 4262362 (E.D. Cal. Sept. 20, 2024).[3]  Defendants argue that Judge Mueller's "first-in-time order" is determinative, or at the very least an intervening authority the court should consider here.  (ECF No. 68 at 2-3).

The undersigned then issued an order granting plaintiff an opportunity to respond to defendants' response to the order to show cause, and defendants an opportunity to reply.  (ECF No. 69.)  Plaintiff argued that Judge Mueller's decision was "based on a plain error of law," but appears to address the unrelated portions of her Witkin v. Gonzalez rulings addressing his application to proceed in forma pauperis.  (See ECF No. 70 at 1-2.)  On reply, defendants argued that the present action is not the place to attack Judge Mueller's rulings, and plaintiff otherwise failed to show why this court should not be bound by them.[4]

////

////

////

---

[3] Judge Mueller denied plaintiff's subsequent motions to set aside the judgment on October 31, 2024 (ECF No. 47), and December 9, 2024 (ECF No. 52), respectively.  Plaintiff has since appealed.  (See ECF No. 49.)

[4] Plaintiff seeks leave to file a sur-reply.  (See ECF Nos. 72 and 73.)  Sur-replies are generally prohibited under Local Rule 230(m) and the undersigned did not request one in the order directing plaintiff's response.  (See ECF No. 69.)  Further, plaintiff has not identified any new issues in defendants' reply warranting a response.  Accordingly, plaintiff's motion is denied.

### III. Analysis

#### A. Maliciousness

The court first considers whether the action should be dismissed as malicious under § 1915(e)(2)(B)(i). The Prison Litigation Reform Act does not define the term "malicious." See Andrews v. King, 398 F.3d 1113, 1121 (9th Cir. 2005). In interpreting the term, the Ninth Circuit looked to its "ordinary, contemporary, common meaning," and found that "[a] case is malicious if it was filed with the 'intention or desire to harm another.'" Id. (quoting Webster's Third New International Dictionary 913 (1993)); see also Washington v. Los Angeles Cnty. Sheriff's Dep't, 833 F.3d 1048, 1055 (9th Cir. 2016) ("a Heck [v. Humphrey, 512 U.S. 477, 489-90 (1994)] dismissal cannot be characterized as malicious, unless the court specifically finds that the complaint was 'filed with the intention or desire to harm another'").

After careful consideration of the record, the undersigned finds insufficient evidence to establish that plaintiff brought the instant action with malice. The court is particularly persuaded by Judge Calabretta's reasoning in Witkin v. Thomas that plaintiff brought that suit to redress perceived constitutional violations, not to harm or harass defendants. As in Thomas, plaintiff here proceeds on a limited lawsuit, one that the previously assigned magistrate judge screened and found to state a single First Amendment retaliation claim. (See ECF No. 21.) While defendants claim the maliciousness of an action "is a separate matter" from screening (see ECF No. 68 at 4), malice is in fact grounds for dismissal at the screening stage. See 28 U.S.C. § 1915A(b)(1). Plaintiff's claim later survived defendants' Rule 12(b)(6) motion, further evincing its legitimacy. (ECF No. 52.) Thus, the absence of any findings of frivolousness "cuts against finding that the case was brought maliciously or with the intent to harm." See Witkin v. Thomas, 2024 WL 4268037, at *3.

Defendants "respectfully submit Judge Calabretta's order conflated separate grounds requiring dismissal under 28 U.S.C. § 1915(e)(2)(B)(i)" in that his "reasoning focused heavily on his conclusion that Thomas and Plaintiff's prior cases were not frivolous." (ECF No. 68 at 4.) The undersigned disagrees. Judge Calabretta cited the legitimacy of plaintiff's claims specifically as evidence of his lack of malintent: "[B]y bringing non-frivolous claims, Plaintiff seeks to

7

vindicate his rights, which means that there is a plausible reason to bring this suit other than to harm or harass Defendants." Witkin v. Thomas, 2024 WL 4268037, at *3. Here, plaintiff's desire to extract $250,000 from CDCR does not establish his intent to do harm where he clearly identifies his goal in bringing this lawsuit as "[c]uring egregious constitutional violations in the operation of the California prison system." (ECF No. 64 at 1.) Indeed, the Supreme Court has long recognized that "the deterrence of future abuses of power by persons acting under color of state law is an important purpose of § 1983." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 268 (1981).

Defendants also assert that plaintiff's litigation history evidences his "intent to use litigation as a means of harassing prison officials."[5] (See ECF No. 61 at 4-8.) However, this argument largely rests on Judge Barnes's recommendations in Thomas, which were later rejected by Judge Calabretta. (See, e.g., ECF No. 61 at 6; ECF No. 65 at 4.) As defendants acknowledge, plaintiff has not accrued any PLRA strikes. (See ECF No. 65 at 7.) This counters the claim that he is abusing the judicial system. See Thomas, 2024 WL 4268037, at *5 (holding plaintiff's litigation history undermines finding of malice "because Plaintiff has never had a lawsuit dismissed as frivolous in his 15-year litigation history"). This also distinguishes the present case from Richey v. Sullivan, No. C14-5050 BHS, 2014 WL 3928014, at *6 (W.D. Wash. Aug. 12, 2014), which defendants rely on. (See ECF No. 61 at 7; ECF No. 65 at 5; ECF No. 68 at 5.) There, plaintiff filed six lawsuits in the first few months of 2014 regarding prison mail issues that he had already litigated. The court dismissed the action in question as malicious, finding the series of filings were "abusive of the judicial process" and "irresponsible litigation that should not be subsidized or encouraged by in forma pauperis status." (Id. at *6.)

The undersigned gave due consideration to Gonzalez. But as explained above, the undersigned was not persuaded by its finding that plaintiff's suit "is not an attempt to remedy a

---

[5] Defendants also point Plaintiff's recognition that one lawsuit could consume "100s of hours of the Court's time," and cost "a couple hundred thousand [dollars]" to defend an action. (ECF Nos. 61 at 7; 61-5 at 40.) Plaintiff made these statements to express his frustration that other CDCR defendants were opting out of an ADR process in another case. Bemoaning the time and expense of litigation is hardly equivalent to gloating about the same.

8

wrong, but an attempt to harm CDCR employees." 2024 WL 3091887, at *3. Another judge in this district similarly declined to follow Gonzalez in another one of plaintiff's § 1983 actions, Witkin v. Pittsely. There, Magistrate Judge Kim considered Judge Calabretta's "well-reasoned decision" in Witkin v. Thomas and found insufficient evidence to demonstrate plaintiff brought the action with intent to harass or harm defendant. Addressing the Gonzalez decision, Judge Kim explained: "[T]his Court does not agree that plaintiff's objective written in a CDCR worksheet plaintiff completed in 2021 in which he claimed his stated objective was 'bringing the authorities to justice' demonstrates an intention to inflict harm rather than to remedy a perceived injustice." Witkin v. Pittsley, No. 2:22-cv-1211 WBS CSK P, 2024 WL 4708013, at *5 (E.D. Cal. Nov. 7, 2024), report and recommendation adopted, No. 2:22-cv-1211 WBS CSK P, 2024 WL 5111999 (E.D. Cal. Dec. 13, 2024). The undersigned reaches the same conclusion as Judge Kim, and accordingly finds that plaintiff did not bring the present action maliciously.

### B. Collateral Estoppel

The court next considers defendants' argument that Judge Mueller's "first-in-time" order in Witkin v. Gonzalez is determinative, i.e., that issue preclusion prevents relitigation of whether plaintiff's goal worksheet and litigation history demonstrate maliciousness. (See ECF No. 68 at 2-3.) For the reasons described below, the court declines to apply collateral estoppel here.

Issue preclusion, or collateral estoppel, bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met: "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." McQuillion v. Schwarzenegger, 369 F.3d 1091, 1096 (9th Cir. 2004). District courts have broad discretion to apply the doctrine of issue preclsuion. Disimone v. Browner, 121 F.3d 1262, 1268 (9th Cir. 1997) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979)).

The court first considers whether issue preclusion could apply to § 1915(e)(2)(B)(i) dismissals. In Denton v. Hernandez, 504 U.S. 25, 34 (1992), the U.S. Supreme Court explained: "Because a [§ 1915(e)(2)(B)(i)] dismissal is not a dismissal on the merits, but rather an exercise

of the court's discretion under the *in forma pauperis* statute, the dismissal does not prejudice the filing of a paid complaint making the same allegations. It could, however, have a res judicata effect on frivolousness determinations for future *in forma pauperis* petitions."[6] The Supreme Court, however, did not address the related issue that defendants argue here, i.e., that dismissal could also have a collateral estoppel effect on future frivolousness litigation. Defendants raise no relevant authorities in their motion. Nevertheless, absent authority distinguishing the present situation from the Denton framework, the court will assume that issue preclusion could apply to § 1915(e)(2)(B)(i) dismissals.

Still, the court will not exercise its discretion to apply issue preclusion. To dismiss for maliciousness, a court must specifically find that the complaint at issue was filed with the intention or desire to harm another. See Washington, 833 F.3d 1048 (citing Andrews, 398 F.3d at 1118); see also 28 U.S.C. § 1915(e)(2)(B)(i) (requiring dismissal where "the action" is malicious). Thus, to apply issue preclusion here, the court would have to impute plaintiff's malicious intent in filing Gonzalez – a case involving an Eighth Amendment excessive force claim against different defendants in a different prison – to the present case. Despite the common threads of the goal-setting worksheet and plaintiff's litigation history, the court cannot say that plaintiff brought both cases with identical intent where they involved such vastly different factual allegations and claims.

Further, the fact that Judge Mueller's ruling is first filed factors against applying issue preclusion:

> [I]f two or more courts render inconsistent judgments on the same claim or issue, a subsequent court is normally bound to follow the most recent determination that satisfies the requirements of issue preclusion. By applying this rule, courts ensure that finality is achieved and that parties are encouraged to appeal an inconsistent judgment directly rather than attack it collaterally before another court.

Droplets, Inc. v. Yahoo! Inc., No. 12-cv-3733 JST, 2019 WL 5781915, at *5 (N.D. Cal. Oct. 15, 2019) (quoting Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir. 1988)). Relatedly, one of the key public policies behind issue preclusion – guarding against inconsistent judgments – is not

---

[6] The Denton Court was analyzing the former § 1915(d), which has been recodified as § 1915(e).

served by creating a further split with the more recent rulings of Judge Calabretta and Judge Kim (as adopted by Judge Shubb). See Freeman v. Ethicon, Inc., 619 F. Supp. 3d 998, 1004 (C.D. Cal. 2022) ("The existence of inconsistent prior judgments is perhaps the single most easily identified factor that suggests strongly that neither should be given preclusive effect." (citing Wright & Miller, 18A Fed. Prac. & Proc. § 4465.2 (3d ed. Apr. 2022 Update))).

Accordingly, the undersigned declines to find that issue preclusion prevents relitigation of whether plaintiff's goal worksheet and litigation history demonstrate maliciousness in this action.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for leave to file a sur-reply (ECF No. 72) is denied.

IT IS HEREBY RECOMMENDED that defendants' motion to dismiss the action as malicious (ECF No. 61) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 11, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE